**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**(Pittsburgh Division)**

ELLIOTT SCHUCHARDT, individually and d/b/a the Schuchardt Law Firm,

Plaintiff,

v.

BARACK H. OBAMA, President of the United States, *et al.*,

Defendants.

Case No. 2:14-cv-0705-CB

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Dated: December 11, 2014

JOYCE R. BRANDA
Acting Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Deputy Branch Director
JAMES J. GILLIGAN
Special Litigation Counsel
MARCIA BERMAN
Senior Trial Counsel
RODNEY PATTON
Trial Attorney
JULIA A. BERMAN
Trial Attorney

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7132
Washington, D.C. 20001
Phone: (202) 514-2205
Email:marcia.berman@usdoj.gov

Counsel for Defendants

## TABLE OF CONTENTS

**PAGE**

TABLE AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. THE SECOND AMENDED COMPLAINT FAILS TO ESTABLISH PLAINTIFF'S STANDING ..... 1

II. PLAINTIFF'S FIRST AMENDMENT CLAIM SHOULD BE DISMISSED ..... 6

A. Good-Faith Investigatory Conduct Not Intended to Deter or Punish Protected Speech or Association Does Not Violate the First Amendment ..... 6

B. Plaintiff's First Amendment Claim Must Also Be Dismissed for Failure to Allege a Direct and Substantial Burden on his Freedom of Speech or Association ..... 9

CONCLUSION ..... 13

**TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*ACLU v. Barr*,
952 F.2d 457 (D.C. Cir. 1991) ........ 6, 7

*ACLU v. Clapper*,
959 F. Supp. 2d 724 (S.D.N.Y. 2013) ........ passim

*Ashcraft v. Iqbal*,
556 U.S. 662 (2009) ........ passim

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 2, 11

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ........ 5, 12, 13

*In re Directives*,
551 F.3d 1004 (FISC Ct. Rev. 2008) ........ 8

*Fighting Finest, Inc. v. Bratton*,
95 F.3d 224 (2d Cir. 1996) ........ 10

*Gordon v. Warren Consol. Bd. of Educ.*,
706 F.2d 778 (6th Cir. 1983) ........ 6, 7

*Gross v. Taylor*,
1997 WL 535872 (E.D. Pa. Aug. 5, 1997) ........ 12

*Haig v. Agee*,
453 U.S. 280 (1981) ........ 8

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013) ........ 5

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ........ 8

*Hollingsworth v. Perry*,
133 S. Ct. 2652 (2013) ........ 3

*Jewel v. NSA*,
673 F.3d 902 (9th Cir. 2011) ........ 3, 4

*Jewel v. NSA*,
2010 WL 235075 (N.D. Cal. Jan. 21, 2010) ........................................................... 3

*Kerchner v. Obama*,
612 F.3d 204 (3d Cir. 2010)........................................................................... 6

*Laird v. Tatum*,
408 U.S. 1 (1972).............................................................................. 6, 11, 12

*Lance v. Coffman*,
549 U.S. 437 (2007)..................................................................................... 3

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................... 3, 4, 13

*Lyng v. UAW*,
485 U.S. 360 (1988)..................................................................................... 10

*McNair v. Synapse Group, Inc.*,
672 F.3d 213 (3d Cir. 2012)........................................................................... 5

*Paton v. La Prade*,
524 F.2d 862 (3d Cir. 1975).......................................................................... 12

*Philadelphia Yearly Meeting of Religious Soc'y of Friends v. Tate*,
519 F.2d 1335 (3d Cir. 1975)........................................................................ 12

*Redd v. City of Enterprise*,
140 F.3d 1378 (11th Cir. 1998) ..................................................................... 6

*Reporters Comm. for Freedom of the Press v. AT&T*,
593 F.2d 1030 (D.C. Cir. 1978)............................................................. 6, 7, 10

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012)...................................................................... 1, 3, 4

*Tabbaa v. Chertoff*,
509 F.3d 89 (2d Cir. 2007)........................................................................... 10

*United States v. Mayer*,
503 F.3d 740 (9th Cir. 2007) .................................................................... 6, 7

*United States v. U.S. Dist. Ct.* (Keith),
407 U.S. 297 (1972)................................................................................... 6, 9

*United States v. Verdugo-Urquidez*,
494 U.S. 259 (1990) ........ 8

*Williams v. Price*,
25 F. Supp. 2d 623 (W.D. Pa. 1998) ........ 11

*Zurcher v. Stanford Daily*,
436 U.S. 547 (1978) ........ 6, 7

**STATUTES**

50 U.S.C. § 1801(e) ........ 8

50 U.S.C. § 1801(h) ........ 13

50 U.S.C. § 1861(a)(1) ........ 8

50 U.S.C. § 1861(a)(2)(B) ........ 7

50 U.S.C. § 1881a(a) ........ 8

50 U.S.C. § 1881a(b) ........ 8

50 U.S.C. § 1861(g)(2) ........ 13

50 U.S.C. § 1881a(e) ........ 13

## INTRODUCTION

Like its forerunners, Plaintiff's Second Amended Complaint (ECF No. 19) ("2d Am. Compl.") contains insufficient allegations of injury to establish his standing, and fails to state viable claims for relief. In sum, the Second Amended Complaint reprises the allegations and claims already set forth in Plaintiff's prior complaints, and to them adds (1) new "background" allegations about NSA intelligence-gathering activities made in another pending case, *see* 2d Am. Compl. ¶¶ 1-23; (2) class action allegations, *id.* ¶¶ 76-84; and (3) a new claim alleging violation of the First Amendment, *id.* ¶¶ 132-39. Plaintiff's prior claims and allegations remain legally deficient for the reasons explained in the Government's Brief in Support of Defendants' Motion to Dismiss (ECF No. 6) ("Gov't Br."), and Brief in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 14) ("Gov't 2d Br."), which are incorporated herein by reference. For the reasons set forth below, Plaintiff's new claim and allegations also fail to establish his entitlement to any relief. Accordingly, the Second Amended Complaint must also be dismissed.

## ARGUMENT

### I. THE SECOND AMENDED COMPLAINT FAILS TO ESTABLISH PLAINTIFF'S STANDING.

As the Government demonstrated in support of its motions to dismiss Plaintiff's two prior iterations of his complaint, Gov't Br. at 9-12; Gov't 2d Br. at 5-10, neither contained well-pleaded allegations of fact "that affirmatively and plausibly suggest" that Plaintiff's online communications have ever been acquired under the NSA's PRISM program, or that records about his telephone calls have ever been collected under the NSA's bulk telephony metadata program. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243-44 (3d Cir. 2012), citing *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff predicates his standing to challenge these foreign-intelligence programs on the claim that the

NSA collects the online communications, and records about the telephone calls, of all Americans, including, therefore, his. But notwithstanding the new wave of "background" allegations he has added to the complaint, 2d Am. Compl. ¶¶ 1-23, Plaintiff still has not plausibly alleged this to be the case.

Principally, Plaintiff embellishes his own allegations with claims made by the plaintiffs (and several of their declarants) in *Jewel v. NSA*, 08-cv-4373 (JSW) (N.D. Cal.). 2d Am. Compl. ¶¶ 8-23. *Jewel* is a self-described "challenge[ to] an [alleged] illegal and unconstitutional program of dragnet communications surveillance conducted by the [NSA] and other Defendants …." *Jewel*, Complaint for Constitutional & Statutory Violations (ECF No. 1) ("*Jewel* Compl.") ¶ 2. Plaintiff incorporates into his complaint the allegation in *Jewel* that the NSA uses a "nationwide network of … surveillance devices" "to acquire the content of a significant portion of the phone calls, emails … and other [online] communications … of practically every American who uses the phone system or the Internet …." *Id.* ¶¶ 8, 9; *see* 2d Am. Compl. ¶ 15.

But the *Jewel* complaint (like Plaintiff's) lacks the "factual enhancement" required to support this "naked assertion," and it is therefore not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678, 681; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). The *Jewel* complaint alleges only that the NSA collects Internet-based communications at AT&T facilities located in four states—California, Washington, Georgia, and Missouri—and records, stored in AT&T databases, that pertain to the telecommunications of AT&T customers. *Jewel* Compl. ¶¶ 55, 68, 82-83. Regardless of whether the *Jewel* complaint adequately pleads the standing of the plaintiffs there, who allegedly are AT&T subscribers, *see id.* ¶¶ 20-24, it contains no well-pleaded allegations from which it could plausibly be concluded that the NSA collects information about the telecommunications of "practically every American," including persons, such as Plaintiff, who are not subscribers to services provided by AT&T. *See* 2d Am. Compl.

¶ 87 (listing telecommunications services to which Plaintiff subscribes). Plaintiff's burden here is to set forth well-pleaded, non-conclusory allegations of fact that affirmatively and plausibly suggest he has suffered a concrete and particularized injury that is traceable to the Government's alleged conduct. *Iqbal*, 556 U.S. at 678-79; *Schering Plough*, 678 F.3d at 243-44. It does him no good simply to repeat the conclusory allegations contained in other litigants' complaints.

Plaintiff also cites the Ninth Circuit's decision in *Jewel v. NSA*, 673 F.3d 902 (9th Cir. 2011), as support for his standing. 2d Am. Compl. ¶ 22. But that decision is of no assistance to Plaintiff because it concerned a standing issue different from the one presented here. In *Jewel* the district court dismissed the complaint for lack of standing on the basis that the harm alleged by the plaintiffs was not "sufficiently particular to [them]," and was instead "a generalized grievance shared in substantially equal measure by all or a large class of citizens" — an argument the Government had not made. *Jewel v. NSA*, 2010 WL 235075, at *1 (N.D. Cal. Jan. 21, 2010).[1] The Ninth Circuit reversed, holding that the injuries asserted by the *Jewel* plaintiffs were not "abstract, generalized grievances and instead me[t] the constitutional standing requirement of concrete injury," because (contrary to the district court's conclusion) the plaintiffs' allegations "'specifically link[ed] [them] to the alleged surveillance activities.'" *Jewel*, 673 F.3d at 905, 907 (quoting *Jewel*, 2010 WL 235075, at *5); *see id.* at 910.

The Government's motion in this case, however, does not present the question whether Plaintiff's claimed injury is sufficiently concrete and particularized. The question is whether Plaintiff's claim that he has been injured at all is supported by sufficient well-pleaded and non-

[1] *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013) (explaining that "raising only a generally available grievance about government—claiming only harm to [the plaintiff's] and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large"—does not state a concrete and particularized injury that confers Article III standing) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992)); *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

conclusory allegations of fact to meet the plausibility requirement of *Iqbal* and *Schering Plough*. The answer is no, because neither Plaintiff's own allegations, nor those he has imported from *Jewel*, plausibly link him to the alleged intelligence-gathering activities he purports to challenge. *See Defenders of Wildlife*, 504 U.S. at 563 (Article III requires "that the party seeking [judicial] review" of allegedly unlawful conduct "be himself among the injured").[2]

The declarations that Plaintiff cites from the *Jewel* case also fail to establish that critical link, as none of them supports the allegation that the NSA collects information about the telecommunications of all Americans. Plaintiff cites the statement of former NSA employee William Binney that, following the September 11, 2001, terrorist attacks, he "learned" that the NSA had begun using a "data-min[ing] program" to "collect and analyze domestic e-mail, without a warrant." 2d Am. Compl. ¶¶ 9-12, 19; *see Jewel*, Declaration of William E. Binney (ECF No. 88) ("Binney Decl.") ¶¶ 5-6. But nothing in these allegations—which are based on hearsay (*see* Binney Decl. ¶ 5)—even purports to describe the scope or scale of these supposed surveillance activities, or supports the conclusion that they involved collection of information about all Americans' communications.

In addition to the Binney Declaration, Plaintiff cites the declarations of two other former NSA employees, *Jewel*, Declaration of J. Kirk Wiebe (ECF No. 86) ("Wiebe Decl."); *id.*, Declaration of Thomas A. Drake (ECF No. 87) ("Drake Decl."); *see* 2d Am. Compl. ¶¶ 20, 21, who express agreement with Mr. Binney's assertion that the NSA today "has the capability to seize and store most electronic communications passing through its U.S. intercept centers," which Mr. Binney "estimate[s]" to number between ten and twenty. Binney Decl. ¶¶ 7-9; Wiebe

[2] Whether the *Jewel* plaintiffs can prove their standing as a matter of fact, and can do so without risking or requiring impermissible disclosures of national security information protected by the state secrets privilege, remains the subject of ongoing proceedings in that case. *See, e.g.*, *Jewel*, Gov't Defs.' Opp. to Pls.' Mot. for Partial Summ. Judg. & Cross-Mot. for Partial Summ. Judg. on Pls.' Fourth Am. Claim (ECF No. 286-6) at 20-23.

Decl. ¶ 8; Drake Decl. ¶ 8. They also agree with Mr. Binney's conclusion, based on media reports about the anticipated capacity of new NSA digital storage facilities, that the NSA "is, in fact, storing all [the electronic communications] that they are collecting." Binney Decl. ¶¶ 11-13; Wiebe Decl. ¶ 9; Drake Decl. ¶ 9. But by the time these gentlemen executed their declarations in June 2012, they had not been employed by the NSA for years—in the cases of Messrs. Binney and Wiebe, for more than a decade—*see* Binney Decl. ¶ 6; Wiebe Decl. Exh. A at 2; Drake Decl. Exh. A at 2, and could only speculate about the nature, scope, and focus of the NSA's current intelligence-gathering activities. The Supreme Court has made clear that speculation about the scope and operation of the Government's foreign-intelligence surveillance programs will not support a finding, for standing purposes, that a litigant has been a subject of such surveillance. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147-51 (2013). Moreover, even assuming the NSA were "stor[ing] most electronic communications passing through its U.S. intercept centers," nothing in the Binney, Wiebe, and Drake Declarations even purports to suggest what fraction of Americans' electronic communications passes through the 10-20 "intercept centers" whose existence Mr. Binney posits, much less that they intercept the communications of all Americans, including Plaintiff's.[3]

Notwithstanding multiple attempts, Plaintiff still has not set forth well-pleaded, non-conclusory allegations from which it could plausibly be concluded that the NSA intelligence-gathering activities he purports to challenge involve the collection of information about all Americans' communications, nor any other non-speculative basis on which it could plausibly be concluded that these activities involve collection of information about his communications.

[3] Plaintiff's class-action allegations, 2d Am. Compl. ¶¶ 76-84, are immaterial to the standing analysis. Plaintiff must establish his standing regardless of whether he seeks to litigate his claims individually or on behalf of a class. *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 360-61 (3d Cir. 2013); *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 223-24 (3d Cir. 2012).

Plaintiff therefore cannot establish his Article III standing, and this case must be dismissed for lack of subject matter jurisdiction.  *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir. 2010).

## II.     PLAINTIFF'S FIRST AMENDMENT CLAIM SHOULD BE DISMISSED.

Plaintiff's First Amendment claim, 2d Am. Compl. ¶¶ 134-39, asserts that the challenged NSA intelligence-gathering programs violate his freedom of speech and association.  Under long accepted principles, discussed below, Plaintiff's First Amendment claim perishes in the wake of his Fourth Amendment claim, which fails for the reasons discussed in the Government's prior briefs.  *See* Gov't Br. at 12-19; Gov't 2d Br. at 10-19.  Alternatively, even if the Court were to hold that Plaintiff's First Amendment claim could survive dismissal of his Fourth Amendment claim, his allegations would still be insufficient to establish an entitlement to relief for violation of his First Amendment rights.

### A.     Good-Faith Investigatory Conduct Not Intended to Deter or Punish Protected Speech or Association Does Not Violate the First Amendment.

Recognizing the need to accommodate the Government's interests where prevention of crime, or, even more imperatively, potential threats to national security are concerned, *see United States v. U.S. Dist. Ct. (Keith)*, 407 U.S. 297, 313 (1972), courts distinguish for purposes of First Amendment analysis between government investigations that may have an incidental effect of deterring First Amendment activity, and concrete government action of a regulatory, proscriptive, or compulsory nature that is directed against individuals based on their expressive or associational activities.  *See, e.g.*, *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978); *Laird v. Tatum*, 408 U.S. 1, 11 (1972); *United States v. Mayer*, 503 F.3d 740, 747-53 (9th Cir. 2007); *Redd v. City of Enter.*, 140 F.3d 1378, 1383-84 (11th Cir. 1998); *Gordon v. Warren Consol. Bd. of Educ.*, 706 F.2d 778, 781 n.3 (6th Cir. 1983) (collecting cases); *ACLU v. Barr*, 952 F.2d 457, 471 (D.C. Cir. 1991); *Reporters Comm. for Freedom of the Press v. AT&T*, 593 F.2d 1030, 1051-

53 (D.C. Cir. 1978); *[Redacted]*, Dkt. No. PR/TT [redacted], Opinion and Order, 66-69 (F.I.S.C. [date redacted]) (attached hereto as Exhibit A).

Accordingly, good faith governmental investigations conducted with "scrupulous" adherence, *Zurcher*, 436 U.S. at 564, to Fourth Amendment requirements, without the purpose of deterring or penalizing protected expression or association, do not violate the First Amendment. *See Reporters Comm.*, 593 F.2d at 1051-53; *see also Gordon*, 706 F.2d at 781 n.3 ("[S]urveillance consistent with Fourth Amendment protections . . . does not violate First Amendment rights, even though it may be directed at communicative or associative activities."); *ACLU v. Clapper*, 959 F. Supp. 2d 724, 753 (S.D.N.Y. 2013) (concluding that "[t]he Government's argument [on this point] is well-supported").[4]

Here, Plaintiff does not even purport to allege that the challenged NSA programs are directed against him (or any other individuals) based on expressive or associational activities. Indeed, as the court in *ACLU* recognized, the express terms of Section 215 (under which the bulk collection of telephony metadata is authorized) prohibit the statute's use for purposes of investigations "conducted 'solely on the basis of activities that are protected by the first amendment,'" 959 F. Supp. 2d at 753 (quoting 50 U.S.C. § 1861(a)(2)(B)), a restriction the FISC takes into account and reinforces each time it re-authorizes the bulk telephony metadata program. *See* September 11, 2014, FISC Primary Order (attached hereto as Exhibit B) at 2; *id.* at 7 n.6, 9 n.7 (prohibiting queries of the metadata using selectors chosen "solely on the basis of activities

---

[4] The Ninth Circuit has "clarif[ied] that good faith . . . requires" that the "government investigation" be "justified by a legitimate" purpose that "outweighs any harm to First Amendment interests." *Mayer*, 503 U.S. at 753; *see also Barr*, 952 F.2d at 471 (no "legitimate purpose" when "surveill[ing] with the intent of deterring membership in . . . an association engaged in lawful activities"). For the reasons set forth in the text, both the bulk telephony metadata program and the PRISM collection authorized by Section 702 surmount this low bar.

that are protected by the First Amendment").[5]  And FISA Section 702, under which PRISM collection is conducted, authorizes targeting only of non-U.S. persons reasonably believed to be located abroad, 50 U.S.C. § 1881a(b), that is, of persons who do not have First Amendment rights to begin with, *see United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections [only] when they have come within the territory of the United States and developed substantial connections with this country.").

Indeed, Plaintiff makes no claim that the bulk telephony metadata program is conducted for any purpose other than the statutorily authorized objective of obtaining foreign intelligence information to protect against foreign terrorist attacks, *see* 50 U.S.C. § 1861(a)(1); September 11, 2014, Primary Order at 2.  Nor has Plaintiff alleged that targeted PRISM collection of non-U.S. person communications is conducted for any purpose other than the authorized acquisition of foreign intelligence information to protect the Nation against such dangers as, for example, international terrorism, the international proliferation of weapons of mass destruction, and the clandestine intelligence activities of foreign powers, *see* 50 U.S.C. § 1801(e); *id.* § 1881a(a). These are not only legitimate Government interests, they represent paramount national security concerns.  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010) ("[T]he Government's interest in combating terrorism is an urgent objective of the highest order."); *Haig v. Agee*, 453 U.S. 280, 307 (1981) ("[N]o governmental interest is more compelling than the security of the Nation."); *In re Directives*, 551 F.3d 1004, 1012 (FISC Ct. Rev. 2008) (national-security interest in conducting acquisitions pursuant to Section 702 "is of the highest order of magnitude").

---

[5]  Although Plaintiff's allegation that the bulk telephony metadata program collects "all 'call detail records' for calls made wholly within the United States," 2d Am. Compl. ¶ 33, is incorrect, *see* Gov't 2d Br. at 9, it underscores the point that Plaintiff does not and, due to the program's scale, cannot suggest that the program singles him out in any way, let alone on the basis of his expressive or associational activity.

Because Plaintiff has not plausibly alleged that these intelligence-gathering programs violate his Fourth Amendment rights, *see* Gov't Br. at 12-19; Gov't 2d Br. at 10-19, nor alleged at all (plausibly or otherwise) that the purposes of these programs include the suppression of free expression or association, *supra*, at 7-8, he has failed to state a claim that either of the challenged programs violates the First Amendment.[6]

**B. Plaintiff's First Amendment Claim Must Also Be Dismissed for Failure to Allege a Direct and Substantial Burden on his Freedom of Speech or Association.**

Even if the Court concluded that Plaintiff's First Amendment claim could in theory survive dismissal of his Fourth Amendment claim, his First Amendment claim would still fail for the independent reason that he has not alleged a direct and substantial burden on his freedom of speech or association. Rather, Plaintiff's allegations amount at most to a subjective "chill" on his First Amendment freedoms, arising solely from speculative fears that are based on his (mis)understanding of the challenged NSA programs rather than their actual operation. These misplaced fears are an insufficient basis on which to bring a First Amendment claim.

"[C]onsonant with the First Amendment," the Government "may engage" in conduct that "incidentally inhibits protected forms of association," which, though it may "make it more

[6] The Supreme Court's decision in *Keith* is not to the contrary. In that case, the Court addressed the constitutionality of warrantless surveillance targeting "domestic organizations" that sought to "attack and subvert" the Government. *Keith*, 407 U.S. at 299-300. In finding that prior judicial approval for such surveillance was necessary, *id.* at 321, the Court expressed particular concern that "domestic security surveillance" might infringe on "constitutionally protected privacy of speech" "because of the inherent vagueness of the domestic security concept, the necessarily broad and continuing nature of intelligence gathering, and the temptation to utilize such surveillances to oversee political dissent." *Id.* at 320. The concerns that animated the *Keith* Court are not implicated by the telephony metadata program or PRISM collection, because, as explained above, Sections 215 and 702 authorize only the collection of foreign intelligence, and their terms prohibit, either expressly, or in effect, the investigation of persons solely on the basis of activities protected by the First Amendment. *See Keith*, 407 U.S. at 321-22 ("emphasiz[ing]" that the "scope of [its] decision" addressed only the "domestic aspects of national security" and did "not address[]" the "issues which may be involved with respect to activities of foreign powers or their agents").

difficult for individuals to exercise their freedom of association, this consequence does not, without more, result in a violation of the First Amendment." *Fighting Finest*, *Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996) (citing *Lyng v. UAW*, 485 U.S. 360, 366 (1988)); *see also Reporters Comm.*, 593 F.2d at 1052 ("Not every Government action that affects, has an impact on, or indeed inhibits First Amendment activity constitutes the kind of 'abridgement' condemned by the First Amendment."). "Mere incidental burdens on the right to associate do not violate the First Amendment." *Tabbaa v. Chertoff*, 509 F.3d 89, 101 (2d Cir. 2007); *ACLU*, 959 F. Supp. 2d at 753 (stating same in finding that the "bulk [telephony] metadata collection does not burden First Amendment rights substantially"). Rather, "[t]o be cognizable, the interference with associational rights must be 'direct and substantial' or 'significant.'" *Fighting Finest*, *Inc.*, 95 F.3d at 228 (quoting *Lyng*, 485 U.S. at 366, 367 & n.5).

Plaintiff's allegations of a violation of his free-speech and associational rights do not meet this standard. Plaintiff claims that he is "no longer able to freely express himself by means of e-mail or in documents stored by means of internet cloud services because the Defendants are collecting and data-mining such documents." 2d Am. Compl. ¶ 136. He maintains also that the Defendants have "interfered with [his] ability to freely associate with other persons" because the Defendants have obtained "phone and internet data showing with whom [he] associates." *Id.* ¶ 138. These allegations fail to state a claim that the Government has burdened Plaintiff's First Amendment rights at all, much less in a "direct" and "substantial" manner, first because they are predicated on the assumption that the challenged NSA intelligence programs involve interception of Plaintiff's electronic communications, and acquisition of metadata associated with Plaintiff's telephone calls. As discussed above and in the Government's prior briefs, Plaintiff has not

plausibly alleged that to be the case. *See supra*, at 2-5; Gov't Br. at 9-12; Gov't 2d Br. at 5-10.[7] Plaintiff's "bare assertions," *Iqbal*, 556 U.S. at 681, in his First Amendment claim that the Government is "collecting and data-mining" his online documents, and has obtained "phone and internet data showing with whom [he] associates,'" 2d Am. Compl. ¶¶ 136, 138, are just as unaccompanied by "factual matter" raising them "above the speculative level" as are the similar "background" allegations set forth in his complaint. *Twombly*, 550 U.S. at 555-56.[8]

Second, claims that Plaintiff "is no longer able to freely express himself" or "freely associate with other persons," simply because of a fear that the Government might obtain or "data-mine" information about his communications, are insufficient to state a claim for direct and substantial interference with his First Amendment rights. It is true that a "constitutional violation[] may arise from the deterrent, or 'chilling,' effect" of government action that "fall[s] short of a direct prohibition against the exercise of First Amendment rights." *Laird*, 408 U.S. at 11. But the alleged chill on Plaintiff's First Amendment freedoms is attributable to his own speculative fears of surveillance, rather than being plausibly connected to the challenged

---

[7] Even presuming that the Government has collected metadata associated with Plaintiff's telephone calls under the bulk telephony metadata program, under the FISC's orders NSA analysts may only review those records within two hops of selectors (*e.g.*, telephone numbers) that the FISC has determined are reasonably suspected of association with terrorist organizations the FISC has approved for targeting. *See* September 11 Primary Order at 2, 7-8; Gov't 2d Br. at 3, 8-10. Plaintiff has made no plausible allegation that records of his calls are among the "very small percentage" of the records that are ever reviewed by NSA analysts under this standard. *See ACLU*, 959 F. Supp. 2d at 735. Hence, the Second Amended Complaint contains no "factual matter" to support Plaintiff's assertion that the Government learns "with whom [he] associates," 2d Am. Compl. ¶ 138, from bulk telephony metadata collected by the NSA. *Twombly*, 550 U.S. at 555-56; *see Iqbal*, 556 U.S. at 681.

[8] For this reason, *Williams v. Price*, 25 F. Supp. 2d 623 (W.D. Pa. 1998), provides no comfort to Plaintiff. In that case, the court found that the claimed First Amendment right of the plaintiff prisoners to confer confidentially with their counsel was chilled by the presence of correctional officers, stationed outside the meeting room, who could hear what the inmates and counsel were saying inside. *Id.* at 624-25, 630. Here, in contrast, Plaintiff has not plausibly alleged that his online communications, or telephony metadata associated with his calls, have been obtained or reviewed by the Government.

intelligence programs, because, as we have shown, the Second Amended Complaint contains no plausible allegations that information about Plaintiff's communications has been obtained, reviewed, or used in any fashion under PRISM or the telephony metadata program. *See supra*, at 2-5; Gov't Br. at 9-12; Gov't 2d Br. at 5-8. "Allegations of a subjective chill" arising from an "individual's knowledge" of the "mere existence, without more, of a governmental investigative and data-gathering activity" "are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 10, 11, 13-14.[9] Such allegations are insufficient even to confer standing, much less to state a claim for a First Amendment violation. *See Amnesty Int'l, USA*, 133 S. Ct. at 1152 (and cases cited therein); *ACLU*, 959 F. Supp. 2d at 754 ("Fear that telephony metadata relating to [plaintiffs' calls] will be queried or reviewed or further investigated 'relies on a highly attenuated chain of possibilities,'" and that "speculative fear" can neither "create standing" nor "establish a violation of an individual's First Amendment rights.") (quoting *Amnesty Int'l*, 133 S. Ct. at 1148, 1152).[10]

---

[9] *See also Paton v. La Prade*, 524 F.2d 862, 874 (3d Cir. 1975) (teacher who designed a course taken by a student, and who claimed that a resulting FBI investigation of the student "constituted an 'inhibiting force'" on his free expression, suffered only a non-cognizable "subjective chill"); *Philadelphia Yearly Meeting of Religious Soc'y of Friends v. Tate*, 519 F.2d 1335, 1137-39 (3d Cir. 1975) (plaintiffs suffered only "subjective chill" of First Amendment rights arising from police creation of "dossiers" about them based on information gathered from "public meetings," which the police shared with "other law enforcement agencies"; cognizable injury occurred only when police shared dossiers with public or "broadcast" on "network television" the names of groups and individuals "on whom such files were kept"); *Gross v. Taylor*, 1997 WL 535872, at *16 (E.D. Pa. Aug. 5, 1997) ("vague charge of chilled expression" insufficient to "sustain" a "First Amendment claim").

[10] Plaintiff's allegation he could not consult with certain persons by e-mail in preparing his Second Amended Complaint, because "the Defendants could provide such communications *directly* to the lawyers representing the [G]overnment in this lawsuit," 2d Am. Compl. ¶ 137, provides no support for his First Amendment claim. This allegation is too speculative to satisfy either the requirement of actual or imminent injury, *see Amnesty Int'l, supra*, or the plausibility standard under *Iqbal*. That is all the more so considering that both Section 215 and Section 702 require the Government to adopt minimization procedures "to prohibit the dissemination …of nonpublicly available information concerning unconsenting United States persons" except as

*(footnote continued on next page)*

Accordingly, Plaintiff's First Amendment claim, like the other causes of action he has attempted to plead, states no violation of legal right entitling him to relief.

**CONCLUSION**

For the reasons stated above, the Second Amended Complaint should be dismissed.

Dated: December 11, 2014

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General
JOSEPH H. HUNT
Director, Federal Programs Branch
ANTHONY J. COPPOLINO
Deputy Branch Director
JAMES J. GILLIGAN
Special Litigation Counsel

*/s/ Marcia Berman*
MARCIA BERMAN
Senior Trial Counsel
RODNEY PATTON
Trial Attorney
JULIA A. BERMAN
Trial Attorney
U.S Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Rm. 7132
Washington, D.C. 20001
Phone: (202) 514-2205
Fax: (202) 616-8470
Email: Marcia.Berman@usdoj.gov

Counsel for Defendants

*(footnote continued from previous page)*
"consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information." 50 U.S.C. §§ 1861(g)(2), 1881a(e); *see id.* § 1801(h). Also unavailing is Plaintiff's allegation that "it is possible that future American governments will use" information obtained under the challenged NSA intelligence programs "to blackmail or target political enemies." 2d Am. Compl. ¶ 139. Again, this type of "allegation[] of *possible* future injury [is] not sufficient" to confer standing, much less support a claim for the violation of Plaintiff's First Amendment rights, *Amnesty Int'l USA*, 133 S. Ct. at 1147, especially because Plaintiff does not even allege that he might be among the unidentified "political enemies" whom the Government could hypothetically "target." *See Defenders of Wildlife*, 504 U.S. at 563.