IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(Pittsburgh Division)

| | |
|---|---|
| ELLIOTT SCHUCHARDT, individually and d/b/a the Schuchardt Law Firm, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 2:14-cv-0705-CB ) |
| DONALD J. TRUMP, President of the United States, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR RENEWED MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Dated: August 16, 2017

CHAD A. READLER
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

JAMES J. GILLIGAN
Special Litigation Counsel

RODNEY PATTON
Senior Counsel

JULIA A. BERMAN
Trial Attorney

TIMOTHY A. JOHNSON
Trial Attorney

CAROLINE J. ANDERSON
Trial Attorney

U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7320
Washington, D.C. 20001
Phone: (202) 305-7919
E-mail: rodney.patton@usdoj.gov

*Counsel for Defendants*

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

      A.   The Exhibits Upon Which Plaintiff Relies Do Not Support His Standing ................. 2

      B.   The Opinions of Plaintiff's Two Proffered Experts Are Inadmissible ........................ 5

      C.   The Four Circuit Court Decisions Plaintiff Relies Upon Are Inapposite ................... 7

CONCLUSION .................................................................................................................... 8

# TABLE OF AUTHORITIES

**CASES**                                                         **PAGE(S)**

*ACLU v. Clapper*,
   785 F.3d 787 (2d Cir. 2015) .................................................................................... 8

*ACLU v. U.S. Dep't of State*,
   878 F. Supp. 2d 215 (D.D.C. 2012) ........................................................................ 3

*Bruno v. Bozzuto's, Inc.*,
   311 F.R.D. 124 (M.D. Pa. 2015) ............................................................................. 6

*Elcock v. Kmart Co.*,
   233 F.3d 734 (3d Cir. 1999) .................................................................................... 6

*Jewel v. NSA*,
   2015 WL 545925 (N.D. Cal. Feb. 10, 2015) .......................................................... 7

*Jewel v. NSA*,
   673 F.3d 902 (9th Cir. 2011) ................................................................................... 7

*Karlo v. Pittsburgh Glass Works*,
   *Inc.*, 849 F.3d 61 (3d Cir. 2017) ............................................................................. 5

*Obama v. Klayman*,
   800 F.3d 559 (D.C. Cir. 2015) ................................................................................ 8

*Oddi v. Ford Motor Co.*,
   234 F.3d 136 (3d Cir. 2000) .................................................................................... 5

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir. 1994) ...................................................................................... 6

*Schuchardt v. President of the United States*,
   839 F.3d 336 (3d Cir. 2016) ................................................................................ 1, 4

*Soldo v. Sandoz Pharm. Corp.*,
   244 F. Supp.2d 434 (W.D. Pa. 2003) ...................................................................... 6

*In re TMI Litig.*,
   193 F.3d 613 (3d Cir. 1999) .................................................................................... 6

*Wikimedia Foundation v. NSA*,
   857 F.3d 193 (4th Cir. 2017) ................................................................................ 7-8

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 2

**FEDERAL RULE OF EVIDENCE**

Fed. R. Evid. 602 ....................................................................................................... 3, 5
Fed. R. Evid. 702 ....................................................................................................... 5, 6
Fed. R. Evid. 901 ....................................................................................................... 2, 3

**EXECUTIVE ORDERS**

Executive Order 12333 .............................................................................................. 1, 6

## **INTRODUCTION**

Plaintiff has argued before this Court and the Third Circuit that the so-called "Snowden documents" attached to his Complaint "outlined a coherent and plausible case supporting [the] PRISM-as-dragnet allegations" on which he predicates his standing. *Schuchardt v. President of the United States*, 839 F.3d 336, 349 (3d Cir. 2016); *see also id.* at 338, 354 & n.13. But the Government has demonstrated that these and other documents relied on by Plaintiff contain nothing but inadmissible, unauthenticated hearsay, and, even on their face, do not support his allegations. ECF No. 58 ("Defs.' Br.") at 17-25. The Government has also presented evidence—most notably sworn testimony from the Director of Operations of the National Security Agency ("NSA")—that PRISM is a targeted intelligence-gathering program. *Id.* at 2-6. In the face of the facts and argument presented in the Government's renewed motion to dismiss on remand, Plaintiff has jettisoned both his challenge to PRISM and his reliance on the documents that earned him a remand to this Court. *See* ECF No. 68 ("Pl.'s Opp.") at 8, 14.

Now training his sights on Executive Order 12333 instead, *id.* at 14, Plaintiff claims he has standing because allegedly the NSA is "collecting the nation's email database" under (unspecified) programs authorized by that executive order. *See id.* at 8, 11-12, 14. The NSA's Director of Operations also attests, however, that "the NSA does not, under Executive Order 12333, or any other authority, collect in bulk (or store) all or substantially all of the e-mail (or other Internet-based communications) of all U.S. persons." Defs.' Br. at 7.[1] In support of his contention to the contrary, Plaintiff now relies upon the "opinions" of two former NSA employees—both of whom left NSA employment more than 15 years ago— who in turn rely upon a small clutch of additional so-called "Snowden documents"—*i.e.*, documents allegedly

---

[1] Plaintiff tries to parse this unequivocal language to find ambiguity where there is none. *See* Pl.'s Opp. at 8, 10. The language means what it says: the NSA does not collect all U.S. persons' e-mail in bulk; nor does it store all U.S. persons' e-mail in bulk.

among those stolen by Edward Snowden from the NSA—to support the speculative conclusion that Defendants are collecting and storing all Americans' online communications, including, therefore, his. Pl.'s Opp. at 8, 9, 11-12.

But these five documents, ECF Nos. 62-2 through 62-6, are unauthenticated and hearsay, and thus are inadmissible as evidence to support that conclusion. *See* Defs.' Br. at 18. Moreover, even taken at face value, they contain no information to support a claim that the NSA is collecting the Nation's entire "e-mail database." And the opinions offered by Plaintiff's two witnesses (William Binney and J. Kirk Wiebe) meet none of the reliability requirements for admission of expert testimony under Federal Rule of Evidence 702. This case, therefore, should be dismissed for lack of evidence supporting Plaintiff's standing, and nothing in the four inapposite circuit court decisions Plaintiff relies upon (Pl.'s Opp. at 22-25) changes that.[2]

## ARGUMENT

### A. The Exhibits Upon Which Plaintiff Relies Do Not Support His Standing.

None of the documents on which Plaintiff and his witnesses rely for their assertions has been properly authenticated, as required for their admissibility. Fed. R. Evid. 901(a); *see* Defs.' Br. at 18. Plaintiff contends that Defendants have authenticated these five exhibits through public statements made by senior officials acknowledging that Edward Snowden in fact stole classified U.S. Government documents from the NSA. Pl.'s Opp. at 14-15. But Plaintiff has offered no admissible evidence that the exhibits to Mr. Binney's affidavit are in fact U.S. Government documents that Mr. Snowden stole. Mr. Binney asserts that he obtained the documents from various publications that obtained the documents from two journalists, who in turn obtained them from Mr. Snowden. Binney Aff. ¶ 29. Apart from his statement that he

---

[2] Plaintiff also devotes part of his opposition brief to the "merits" of his case, *see* Pl.'s Opp. at 16-22, which Defendants need not address on a Rule 12(b)(1) motion to dismiss.

2

obtained the five documents in question from various media outlets, Mr. Binney claims no personal knowledge, *see* Fed. R. Evid. 602, that the documents he obtained from these publications are in fact documents that they obtained from the two named journalists; that the journalists in fact obtained these documents from Edward Snowden; or that the documents he gave the journalists are in fact some of the documents he misappropriated from the NSA.[3]

Each link in this chain of custody is implicitly predicated on inadmissible hearsay—out-of-court assertions by each of these intermediaries that the documents on which Plaintiff now seeks to rely are documents that Mr. Snowden spirited from the NSA. *See* Defs.' Br. at 18-19. Without evidence that the particular documents attached to Mr. Binney's affidavit were among those documents, general admissions by Government officials that Mr. Snowden stole classified information cannot authenticate the specific documents on which Plaintiff seeks to base his case. *See, e.g.*, *ACLU v. U.S. Dep't of State*, 878 F. Supp. 2d 215, 224 (D.D.C. 2012) (officials' "generalized and sweeping comments" regarding disclosure of classified documents by Wikileaks do not constitute acknowledgment that the specific documents at issue were among those published by Wikileaks).[4] And, even if the five exhibits were authenticated, they would remain written out-of-court statements regarding NSA intelligence-gathering activities, as to which Plaintiff has identified no applicable hearsay exception or exclusion. *See* Defs.' Br. at 19.

---

[3] As before, the Government neither confirms nor denies the authenticity of the purportedly classified documents on which Plaintiff relies. *See* Defs.' Mem. at 19 n.13.

[4] Plaintiff also urges, in conclusory fashion, that his witnesses have "authenticate[d] the documents because they relate to programs that they created, or worked on, at the NSA." Pl.'s Opp. at 15; Binney Aff. ¶ 22; Wiebe Aff. ¶ 7. But neither witness attests that he ever worked with or even saw these particular documents while employed with the NSA, and so has not established a basis in personal knowledge on which to vouch for their authenticity, *see* Fed. R. Evid. 901(b)(1). If, on the other hand, these were, hypothetically, documents that Messrs. Binney and Wiebe reviewed before leaving the NSA in 2001, then the documents and the information they contain would be too remote in time to qualify as admissible evidence of current NSA intelligence-gathering activities. *See* Defs.' Br. at 23 n.15.

Most importantly, perhaps, the exhibits to Mr. Binney's affidavit contain no information that establishes Plaintiff's standing. Mr. Binney says that Exhibits 2 through 4 to his affidavit show the various "tap points" where (he says) the NSA collects domestic communications from telecommunications networks and from other providers inside the United States. *See* Binney Aff. ¶¶ 35-37. Neither the exhibits nor Mr. Binney's explanation, however, say anything to suggest that all domestic online communications pass through these alleged "tap points," or that all communications passing through these tap points are collected by the NSA, both of which would be necessary to support the "linchpin" of Plaintiff's claim that his online communications are being swept up in an alleged dragnet. *See Schuchardt*, 839 F.3d at 354 n.13.

Mr. Binney asserts that Exhibit 5 depicts methods of searching collected data, including one that searches "'front end full take feeds' from the fiberoptic cables." Binney Aff. ¶ 39. According to Mr. Binney, this "means that the NSA is taking" the "full content of e-mail and web queries" and thus "everything off these lines." *Id.* But neither the exhibit (nor the explanation) says anything about whether "these lines" refers to cables carrying wholly domestic, international, or wholly foreign communications. Most critically, neither suggests that the "lines" from which the NSA supposedly acquires the "full take" include all lines on which Americans' electronic communications are carried, such that he could conclude (as he purports to do) that the NSA's take "would include Plaintiff Schuchardt's e-mail and web queries." *Id.*[5]

Finally, Exhibit 6 does not address collection of communications at all, and thus, regardless of the accuracy of the exhibit, it provides no support for Plaintiff's allegation that the NSA collects all domestic online communications.

Therefore, Plaintiff's latest jumble of "Snowden documents" is of no assistance to him.

---

[5] For their part, neither Plaintiff, nor Mr. Wiebe, adds anything of substance to Mr. Binney's discussion of these documents. *See* Pl.'s Opp. at 11-14; Wiebe Aff. ¶¶ 5-7.

## B. The Opinions of Plaintiff's Two Proffered Experts Are Inadmissible.

In addition to relying on the Binney exhibits, Plaintiff proffers the two affiants as "expert witnesses," who, "[b]ased on their review of [these] documents," "believe that Defendants are still engaged in bulk collection of e-mail." Pl.'s Opp. at 11-12. On that basis they "opine[]" that "Defendants 'are intercepting, accessing and storing Schuchardt's private communications." *Id.* at 9.[6] Before expert testimony can be admitted, however, a witness must be qualified as an expert in a field of "scientific, technical, or other specialized knowledge," and the testimony must be "reliable" and a "fit," that is, relevant to "understand[ing] the evidence or to determin[ing] a fact in issue." Fed. R. Evid. 702; *Karlo v. Pittsburgh Glass Works*, 849 F.3d 61, 80 (3d Cir. 2017). The Binney and Wiebe affidavits meet none of these requirements.

First, neither Plaintiff nor Messrs. Binney and Wiebe identify the field of "scientific, technical, or other specialized knowledge" in which they are supposedly experts, making it impossible for the Court to assess whether they are qualified as such. Fed. R. Evid. 702.

Second, Binney's and Wiebe's testimony is unreliable because it is not "based on sufficient facts or data." Fed. R. Evid. 702(b). "A court must examine the expert's conclusion[] in order to determine whether [it] could reliably flow from the facts" and "may conclude that there is simply too great a gap between the data and the opinion proffered." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000). That is the case here. As already shown above, *supra*, at 2-4, the exhibits do not suggest that the NSA is collecting all Americans' online communications, whether under the authority of Executive Order 12333 or otherwise.

---

[6] Neither can be a fact witness because they lack "personal knowledge" of the NSA's current intelligence-gathering programs, *see* Fed. R. Evid. 602, having left the agency in 2001. *See* Binney Aff. ¶ 8; Wiebe Aff., Ex. A. Indeed, while Mr. Binney purports to testify about the operation of the President's Surveillance Program ("PSP"), *see* Binney Aff. ¶¶ 18-19, he fails to note, as he has acknowledged elsewhere, that he was "not personally read into the PSP"—that is, he did not have authorized access to information about the PSP—and his testimony is based on what others allegedly "confided" to him. *See* ECF No. 58-2 ¶ 5; Defs.' Br. at 23.

Unmoored from any supporting evidence, the opinions are unreliable because they lack "a sufficient factual foundation." *Elcock v. Kmart Corp.*, 233 F.3d 734, 754-55 (3d Cir. 2000). Certainly nothing in Mr. Binney's discussion of the exhibits, Binney Aff. ¶¶ 35-42, explains how they might lead to a conclusion that the NSA is collecting Plaintiff's online communications. *See id.* Mr. Wiebe does not discuss the exhibits at all. *See* Wiebe Aff. ¶¶ 5-7. Thus, their opinions are also unreliable for the reason that they offer no basis on which to conclude that their opinions are the "product[s] of reliable principles and methods" that were "reliably applied . . . to the facts of the case." Fed. R. Evid. 702(c), (d). *See Elcock*, 233 F.3d at 748.[7]

Accordingly, contrary to Plaintiff's contention that these affidavits created a "material issue of fact," Pl.'s Opp. at 9, they are inadmissible as evidence of any fact material to Plaintiff's standing, and are incapable of casting any doubt upon the unequivocal testimony by the NSA Director of Operations that the NSA does not collect—under Executive Order 12333, or any other authority—all the online communications of all U.S. persons. *See* Defs.' Br. at 7, 17.[8]

---

[7] Quoting Federal Rule of Evidence 703, Plaintiff contends that the Binney and Wiebe affidavits are "competent evidence in this case" based on Mr. Binney's *ipse dixit* assertion that the "Snowden documents" are the "type of data that experts in the intelligence community would typically and reasonably rely upon to form an opinion as to the conduct of the intelligence community." Pl.'s Opp. at 16; Binney Aff. ¶ 31. This argument is meritless. The admissibility of expert testimony is governed by both Rules 702 and 703. *See, e.g.*, *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 135 (M.D. Pa. 2015). The failure of Plaintiff's witnesses to meet the standards of Rule 702 alone renders their testimony inadmissible. And Mr. Binney's conclusory and unelaborated assertion provides no basis on which this Court can conduct the "independent evaluation into reasonableness" required before the additional determination of admissibility under Rule 703 can be made. *In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999).

[8] Even if the Court were to find that the Binney and Wiebe affidavits manage to eke past the threshold of admissibility, their conclusions and the grounds on which they are based would still remain so flimsy as to constitute, at most, a scintilla of evidence to support Plaintiff's position, and as such, would be insufficient to create a material factual dispute. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 750 n.21 (3d Cir. 1994); *Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp. 2d 434, 557 (W.D. Pa. 2003). In the event the Court nevertheless finds that material facts are genuinely disputed and must be resolved, the Government notes that the "operational details" and "specific sources and methods" employed by the NSA in carrying out its "intelligence-gathering activities" under Executive Order 12333 "remain classified in the

### C. The Four Circuit Court Decisions Plaintiff Relies Upon Are Inapposite.

Finally, Plaintiff directs the Court's attention to "four other federal circuit court[ ]" decisions which he asserts "have held that plaintiffs have standing in bulk collection cases, such as this case." Pl.'s Opp. at 22-25. None of these cases, however, helps Plaintiff with his burden of establishing his standing as a fact, rather than as an allegation. First, in *Jewel v. NSA*, 673 F.3d 902 (9th Cir. 2011), the Ninth Circuit considered allegations of "dragnet" surveillance in a procedural posture requiring—unlike here—that it accept those allegations as true. *Id.* at 907, 910. When put to their factual proof of "mass surveillance" on remand, however, the district court found that the plaintiffs in *Jewel* had "failed to establish a sufficient factual basis to find they [had] standing to sue under the Fourth Amendment regarding the possible interception of their Internet communications." *Jewel v. NSA*, 2015 WL 545925, at *1 (N.D. Cal. Feb. 10, 2015). Now put to his proof on remand here, too, Plaintiff similarly stumbles.

Second, in *Wikimedia Foundation v. NSA*, 857 F.3d 193 (4th Cir. 2017), the Fourth Circuit held, on a facial jurisdictional challenge, *id.* at 200, that the Wikimedia Foundation had plausibly alleged standing to contest claimed NSA surveillance based on the trillion online communications in which it allegedly engaged each year, and their alleged global distribution. *Id.* at 200-02, 207, 211. Plaintiff here, however, is in the same position as the other eight plaintiffs in *Wikimedia*, whose communications lacked the numerosity and global distribution of Wikimedia's, and who relied for their standing on the allegation that the "NSA is intercepting substantially all text-based communications entering and leaving the United States." *Id.* at 213. The Fourth Circuit found that those plaintiffs had not asserted "enough facts" about the

---

interests of national security, and are protected from disclosure by law, including but not limited to Section 6 of the National Security Act of 1959." Decl. of Wayne Murphy, ECF No. 58-1, ¶¶ 6, 22. The Government is therefore entitled, under the state secrets doctrine, to protect these sources and methods and additional details from public disclosure. *See* Defs.' Br. at 17 n.11.

7

"operational scope" of the challenged program to "plausibly show that the NSA is intercepting their communications via a dragnet." *Id.* at 213, 216. Here, on this factual challenge, Plaintiff has not proven enough facts to show that the NSA is intercepting his communications, either.

Third, in *ACLU v. Clapper*, 785 F.3d 787 (2d Cir. 2015), the Second Circuit found that plaintiffs had standing to challenge an NSA program involving bulk collection of call-detail records where the Government had acknowledged the program's existence and did not dispute that records of the plaintiffs' calls were "among those collected." *See id.* at 795-97, 801. That is a far cry from the facts of this case. Here, the Government has denied in sworn testimony that the dragnet Plaintiff alleges occurs, *see* Defs.' Br. at 7, and no evidence in the record (authenticated or not) supports Plaintiff's assertion.

Finally, in *Obama v. Klayman*, 800 F.3d 559 (D.C. Cir. 2015), the D.C. Circuit reversed the district court's grant of a preliminary injunction against the Government in a case involving the same bulk telephony metadata program at issue in the *ACLU* case. *Id.* at 201. No member of the panel found that the plaintiffs in *Klayman* had marshaled sufficient facts to establish their standing to obtain a preliminary injunction, *id.* at 562-65 (Brown, J.); *id.* at 565-69 (Williams, J.); *id.* at 569-70 (Sentelle, J.), and indeed one judge concluded that plaintiffs' allegations had failed to do so at the pleading stage, too. *See id.* at 569 (Sentelle, J.). Plaintiff has similarly failed to marshal facts to support his standing.

## CONCLUSION

For the reasons set forth above, and in the Defendants' initial brief, Plaintiff's Second Amended Complaint should be dismissed for lack of subject matter jurisdiction.

Dated: August 16, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

8

ANTHONY J. COPPOLINO
Deputy Branch Director

JAMES J. GILLIGAN
Special Litigation Counsel

 */s/ Rodney Patton*
RODNEY PATTION
Senior Counsel

JULIA A. BERMAN
CAROLINE J. ANDERSON
TIMOTHY A. JOHNSON
Trial Attorneys

U.S Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7320
Washington, D.C. 20001
Phone: (202) 305-7919
Fax: (202) 616-8470
Email: rodney.patton@usdoj.gov

*Counsel for Defendants*